ERSKINE & TULLEY
A PROFESSIONAL CORPORATION
MICHAEL J. CARROLL (STATE BAR #50246)
220 Montgomery Street, Suite 303
San Francisco, CA  94104
Telephone:  (415) 392-5431
Facsimile:  (415) 392-1978

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE SHEET METAL WORKERS, et al. | ) ) ) | NO. C 08 0306 BZ |
| Plaintiffs, | ) ) | DECLARATION OF CARL SANCHEZ IN SUPPORT OF |
| vs. | ) ) | MOTION FOR DEFAULT JUDGMENT |
| C R SCHELLENGER H V A C, INC., etc., | ) ) ) | |
| Defendant. | ) ) | |

I, CARL SANCHEZ, declare:

1.   I am the Business Representative of Sheet Metal Workers Local Union No. #104 with offices 610 E. Washington St., Suite #C, Petaluma, CA.   If called as a witness, I could competently testify to the following facts from my personal knowledge.  I am familiar with, and I am the custodian of the books and records of the Local as they relate to C R SCHELLENGER H V A C INC.

2.   C R SCHELLENGER H V A C INC. is bound by the terms and conditions of the Standard Form of Union Agreement (SFUA Form A-3-89) collective bargaining agreement which has been extended to June 30, 2006.  The pertinent portions of this agreement along with

1  a Memorandums of Understanding and an Affirmation Agreement are
2  collectively attached hereto as Exhibit 1. Defendant acknowledged
3  the fact that they are bound by these agreements by adhering to
4  their terms and conditions, including the payment of trust fund
5  contributions to plaintiffs.  These agreements remain in full force
6  and effect.

7        I declare under penalty of perjury that the foregoing is
8  true and correct.

9        Executed on July 7, 2008 at Petaluma, California.

10

11                              /s/ Carl Sanchez
                                CARL SANCHEZ
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STANDARD FORM OF UNION AGREEMENT
SHEET METAL, ROOFING, VENTILATING AND
AIR CONDITIONING CONTRACTING DIVISIONS
OF THE CONSTRUCTION INDUSTRY
covering
ALAMEDA, CONTRA COSTA, SANTA CLARA, SAN FRANCISCO, SAN
MATEO, MARIN, SONOMA, NAPA, SOLANO, LAKE AND MENDOCINO
COUNTIES

This Agreement (SFUA Form A-3-89) [NORTH BAY ~ SFUA Form A-3-91] and applicable Addenda amending the July 1989 Agreement and subsequent modifications negotiated between the Sheet Metal Workers International Association Local 104, hereinafter referred to as the "Union", and the Bay Area Association of SMACNA Chapters, and the applicable local chapters for Greater Oakland, Redwood Empire, San Francisco, San Mateo and Santa Clara, for and on behalf of its members and individual signatory contractors hereinafter referred to as "Employer" covers all work for Marin, Sonoma, Mendocino, Lake, Humboldt, Del Norte, Trinity, Alameda, Contra Costa, San Mateo, Napa, Solano, Santa Clara, Santa Cruz, Monterey, San Benito and San Francisco Counties of California. The parties agree that the terms and conditions contained in this agreement and applicable addenda shall apply as the minimum conditions for all work performed hereunder, for and within this contract jurisdiction. All signatory contractors must comply with the terms and conditions applicable to all work performed in given geographical areas as will be noted by area and contained in brackets [ ] below.

This Agreement (SFUA Form A-3-89) [NORTH BAY ~ SFUA Form A-3-91]) and Addenda One, Two and Three, as well as any other applicable Addenda negotiated by the parties, shall be effective for work with purchase orders dated after final ratification of December 20, 1994, excluding wage/fringe benefit increases effective July 1, 1994.

### ARTICLE I

SECTION 1. This Agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in but not limited to the: (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing and servicing of all ferrous or nonferrous metal work and all other materials used in lieu thereof and of all air-veyor systems and air handling systems regardless of material used including the setting of all equipment and all reinforcements in connection therewith; (b) all lagging over insulation and all duct lining; (c) testing and balancing of all air handling equipment and duct work; (d) the preparation of all shop and field sketches used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; and (e) all other work included in the jurisdictional claims of Sheet Metal Workers' International Association.

### ARTICLE II

SECTION 1. No Employer shall subcontract or assign any of the work described herein which is to be performed at a jobsite to any contractor, subcontractor or other person or party who fails to agree in writing to comply with the conditions of employment contained herein including, without limitations, those relating to union security, rates of pay and working conditions, hiring and other matters covered hereby for the duration of the project.

SECTION 2. Subject to other applicable provisions of this Agreement, the Employer agrees that when subcontracting for prefabrication of materials covered herein, such prefabrication shall be subcontracted to fabricators who pay their employees engaged in such fabrication not less than the prevailing wage for comparable sheet metal fabrication, as established under provisions of this Agreement.

### ARTICLE III

SECTION 1. The Employer agrees that none but journeymen, apprentice and preapprentice sheet metal workers shall be employed on any work described in Article I and further, for the purpose of proving jurisdiction, agrees to provide the Union with written evidence of assignment on the Employer's letterhead for certain specified items of work to be performed at a jobsite prior to commencement of work at the site. List of such specific items, which may be revised from time to time, as agreed to by and between SMACNA and SMWIA shall be provided to the Employer.

### ARTICLE IV

SECTION 1. The Union agrees to furnish upon request by the Employer duly qualified journeymen, apprentice and preapprentice sheet metal workers in sufficient numbers as may be necessary to properly execute work contracted for by the Employer in the manner and under the conditions specified in this Agreement.

### ARTICLE V

SECTION 1. The Employer agrees to require membership in the Union, as a condition of continued employment of all employees performing any of the work specified in Article I of this Agreement, within eight (8) days following the beginning of such employment or the effective date of this Agreement, whichever is the later, provided the Employer has reasonable grounds for believing that membership is available to such employees on the same terms and conditions generally applicable to other members and that membership is not denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fee uniformly required as a condition of acquiring or retaining membership.

SECTION 2. If during the term of this Agreement the Labor-Management Relations Act of 1947 shall be amended by Congress in such manner as to reduce the time within which an employee may be required to acquire union membership, such reduced time limit shall become immediately effective instead of and without regard to the time limit specified in Section 1 of this Article.

SECTION 3. The provisions of this Article shall be deemed to be of no force and effect in any state to the extent to which the making or enforcement of such provision is contrary to law. In any state where the making and enforcement of such provision is lawful only after compliance with certain conditions precedent, this Article shall be deemed to take effect as to involved employees immediately upon compliance with such conditions.

### ARTICLE VI

SECTION 1. The regular working day shall consist of (see Addenda) hours labor in the shop or on the job between eight (8) a.m. and 4:30 p.m. and the regular working week shall consist of five (5) consecutive days at (see Addenda) hour days labor in the shop or on the job, beginning with Monday and ending with Friday of each week. All full time or part time labor performed during such hours shall be recognized as regular working hours and paid for at the regular hourly rate. Except as otherwise provided pursuant to Section 4 of this Article, all work performed outside the regular working hours and performed during the regular work week, shall be at (see Addenda) times the regular rate.

Employees shall be at the shop or project site at scheduled starting times each day and shall remain until quitting time.

SECTION 2. New Year's Day, Washington's Birthday, Good Friday, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day, Day after Christmas Day or days locally observed as such, and Saturday and Sunday shall be recognized as holidays. All work performed on holidays shall be paid as follows: two (2) times the regular gross taxable hourly rate or as otherwise provided in the ADDENDA attached hereto.

SECTION 3. It is agreed that all work performed outside of regular working hours during the regular work week and on holidays shall be performed only upon notification by the Employer to the local Union in advance of scheduling such work. Preference to overtime and holiday work shall be given to men on the job on a rotation basis so as to equalize such work as nearly as possible.

SECTION 4. Shift work and the pay and conditions therefore shall be only as provided in written ADDENDA attached to this Agreement. Energy conservation—Retrofit work performed outside the regular work day in occupied buildings shall be performed under shift work conditions to be

throughout the year. Provided, however, an Employer will not be entitled to a new apprentice if the Employer has an apprentice on layoff for lack of work.

SECTION 4. All applicants for apprenticeship shall be between the ages of seventeen (17) and twenty-three (23) years of age and each apprentice shall serve an apprenticeship of four (4) years and such apprentices shall not be in charge of work on any job and shall work under the supervision of a journeyman until apprenticeship terms have been completed and they have qualified as journeymen.

SECTION 5. A graduated wage scale for apprentices shall be established and maintained on the following percentage basis of the established wage rate of journeymen sheet metal workers: (See Addenda.)

This Section shall not have the effect of reducing the wage progression schedule of any apprentice who was indentured prior to the effective date of this Agreement.

### ARTICLE XII

SECTION 1. It is hereby agreed that the Employer may apply to the Joint Apprenticeship and Training Committee and the Joint Apprenticeship and Training Committee shall grant preapprentices on the basis of one (1) preapprentice for each three (3) apprentices employed by the Employer. Provided, however, that an Employer who employs one (1) or more apprentices and at least three (3) sheet metal journeymen shall be entitled to at least one (1) preapprentice. Any apprentice of the Employer on layoff at the effective date of this Agreement must be rehired before said Employer is entitled to any preapprentice. Thereafter, the same conditions and ratios shall apply. (SEE ADDENDA).

In the event the Employer is entitled to employ a preapprentice and the Union fails to comply with the Employer's written request to furnish a preapprentice within forty-eight (48) hours, the Employer may hire such employees and refer them to the Joint Apprenticeship and Training Committee for enrollment.

Preapprentices shall be enrolled as applicants for future openings in the apprenticeship program. The Joint Apprenticeship Committee shall evaluate the qualifications of preapprentices for such openings during the first year of employment. No preapprentice shall be retained beyond one (1) year unless he has been found to be qualified as an applicant.

The wage scale for preapprentices shall be (SEE ADDENDA) of the wage rate of journeymen sheet metal workers. Health and welfare coverage shall be arranged on behalf of the preapprentices by the parties.

### ARTICLE XIII

[NORTH BAY ~ SECTION 1. Classified workers may be employed in the following ratio:

A. one (1) classified worker for any Employer who employs an apprentice;

B. two (2) classified workers for any Employer who employs at least three (3) apprentices;

C. thereafter, the ratio will be one (1) classified worker for each additional three (3) apprentices employed.

Classified workers may perform any work covered by Article I of which they are capable and will work under the general direction of a journeyman. The wage rate for classified workers will be not less than forty (40%) of the journeyman wage rate. They shall be covered by the local health and welfare plan. Pension contributions shall be the same percentage as their wage rate.

In the event the Employer is entitled to employ a classified worker and the Union fails to comply with the Employer's written request to furnish a classified worker within forty-eight (48) hours, the Employer may directly hire such employees, and refer them to the Union. (SEE ADDENDA)]

[NORTH BAY ~ ARTICLE I, SECTION 1...(d) the preparation of all shop and field sketches whether manually drawn or computer assisted used in fabrication and erection, including those taken from original architectural and engineering drawings or sketches; and ...]

### ARTICLE XIV

SECTION 1. This Agreement and Addenda One, Two and Three, as well as any other applicable Addenda negotiated between the parties, shall be effective July 1, 1994 for wage/fringe benefit increases, while all other conditions will be effective as of final ratification December 20, 1994, and remain in full force and effect, except as provided in Item 37 of Addendum One, Item 10 of Addendum Two, and Item 10 of Addendum Three, until the 30th day of June, 1999, and shall continue in force and effect from year to year thereafter unless written notice of re-opening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party by written notice provided, hovever, that if this agreement contains Article X, Section 8 it shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until procedures under Article X, Section 8 have been otherwise completed. This contract extension and amendments to the applicable Standard Form Union Agreement and Addenda, excluding wage/fringe increases effective July 1, 1994, shall become effective on the 20th day of December, 1994 and remain in full force and effect until June 30, 1999.

SECTION 2. If, pursuant to federal or state law, any provision of this Agreement shall be found by a court of competent jurisdiction to be void or unenforceable, all of the other provisions of this Agreement shall remain in full force and effect. The parties agree to meet and negotiate a substitute provision. If negotiations are unsuccessful, the issue may be submitted for resolution by either party pursuant to Article X, Section 8 of this Agreement.

SECTION 3. Not withstanding any other provision of this Article, or any other Article of this Agreement, whenever an amendment to the Standard Form of Union Agreements shall be adopted by the sponsoring national associations, any party to this Agreement, upon the service of notice to all other parties thereto, shall have this Agreement reopened thirty (30) days thereafter, for the sole and only purpose of attempting to negotiate such amendment or amendments into this Agreement for the duration of the term hereof. There shall be no strike or lockout over this issue.

SECTION 4. The Sheet Metal Workers' International Association Local Union 104 and all applicable area SMACNA Chapters, and Bay Area Association of SMACNA Chapter are hereby designated as the respective Labor and Management collective bargaining agents for all persons and firms bound by this Agreement, or those contracting or performing work covered by this Agreement and Addenda, for renegotiations, amendments, renewal, deletion, modification, extension, or any other changes as may be agreed upon by them. Each Employer signatory to or performing work as described in Article I, within the territorial jurisdiction of said Agreement, hereby agrees to be bound by any such renegotiations, modifications, amendments, changes, extensions, or renewals on the same effective date as agreed upon between said Association and Local 104. Should any changes be made during the life of this Agreement, as above provided, they shall be available, within a reasonable time, to all parties upon request. Notices of changes will be sent to all parties who request same and also furnish addresses. Each Employer hereby waives any right it may have to repudiate this Agreement during the term of the Agreement, or during the term of any extension, modification or amendment to this Agreement.

SECTION 5. By execution of this Agreement the Employer authorizes the Bay Area Association of SMACNA Chapters to act as its collective bargaining representative for all matters relating to this Agreement. The parties agree that the Employer will hereafter be a member of the multi-employer bargaining unit represented by said Association unless this authorization is withdrawn by written notice to the Association and the Union at least one hundred and fifty (150) days prior to the then current expiration date of the Agreement.

In witness whereof, the parties hereto affix their signatures and seal this_____day of

_____, 19____

THIS STANDARD FORM OF UNION AGREEMENT HAS PROVIDED FOR THE INCLUSION OF PREAPPRENTICES AND A REDUCTION OF THE WAGE

SCALE FOR NEW APPRENTICES. THE PURPOSE OF THIS IS TO MAKE CON-TRACTORS MORE COMPETITIVE WITH NON-UNION COMPETITION. TO ACHIEVE THAT OBJECTIVE EMPLOYERS AGREE TO MINIMIZE MULTIPLE MARKUPS.

BAY AREA ASSOCIATION OF SMACNA CHAPTERS

Anthony A. Asher, General Counsel

SMACNA - REDWOOD EMPIRE CHAPTER

SMACNA - SAN FRANCISCO CHAPTER

SMACNA - GREATER OAKLAND CHAPTER

SMACNA - SAN MATEO CHAPTER

SMACNA - SANTA CLARA CHAPTER

C.R. Schellenger HVAC inc.
NAME OF FIRM

3150 A. Highway 128 Calistoga 94515
Street                                City            Zip

_Alexander W. Schellenger_  President
Signature                              Title

800219      10-16-01
Contractor License No.      Date  Aus

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL UNION 104

BRUCE WORD, Business Manager

10/23/01
Date

ADDENDUM NUMBER ONE
MARIN, SONOMA, MENDOCINO, LAKE, SAN MATEO, ALAMEDA, CONTRA COSTA, NAPA, SOLANO, SANTA CLARA AND SAN FRANCISCO COUNTIES OF CALIFORNIA

All firms signatory hereto are bound to the applicable Standard Form of Union Agreement. This Addendum modifies and/or amends those terms or conditions of the Standard Form Union Agreement when firms signatory hereto perform work described by this Addendum. Any contract items not specifically addressed/defined in this Addendum shall remain governed by the terms of the Standard Form of Union Agreement.

The amendments to the applicable SFUA and Addendum Number One, excluding wage/fringe increases effective July 1, 1994, shall become effective for work with purchase orders dated after final ratification of December 20, 1994.

## ITEM 1. WAGE AND FRINGE SCHEDULES

Local 104 agrees to the goal of standardizing the fringe package throughout Local No. 104 where applicable.

SECTION A. Effective July 1, 1994, the former Wage and Fringe Schedule shall be increased by a total of twenty-one cents ($0.21) per hour as maintenance of benefits for Health Care and SUB/SHC.

SECTION B. Effective July 1, 1995 the wage/fringe increase shall be one dollar ($1.00) per hour, which shall be allocated as determined by the Local Union No. 104 members working under the terms and provisions of this agreement. Such allocations shall be made to wages, or to existing fringes, or to any new funds as may be mutually agreed to by the parties.

SECTION C. Effective July 1, 1996, the wage/fringe increase shall be one dollar ($1.00) per hour, which shall be allocated as determined by the Local Union No. 104 members working under the terms and provisions of this agreement. Such allocations shall be made to wages, or to existing fringes, or to any new funds as may be mutually agreed to by the parties.

SECTION D. Effective July 1, 1997, the wage/fringe increase shall be one dollar and ten cents ($1.10) per hour, which shall be allocated as determined by the Local Union No. 104 members working under the terms and provisions of this agreement. Such allocations shall be made to wages, or to existing fringes, or to any new funds as may be mutually agreed to by the parties.

SECTION E. Effective July 1, 1998, the wage/fringe increase shall be one dollar and ten cents ($1.10) per hour, which shall be allocated as determined by the Local Union No. 104 members working under the terms and provisions of this agreement. Such allocations shall be made to wages, or to existing fringes, or to any new funds as may be mutually agreed to by the parties.

SECTION F. Bargaining unit employees hereunder shall include owner/members. Owner/members are proprietors, partners or corporate owners or officers or anyone participating in the management of the Employer, but who also performs work pursuant to this Agreement and who has applied for and been granted owner/member status by the Union. Owner/members shall pay all fringe contributions and dues on all actual hours worked with the tools, pursuant to this Agreement, but with respect to Health and Welfare and National Pension contributions only, the actual hours worked under the collective bargaining agreement or the minimum contribution hours set from time-to-time by the Trustees of the Sheet Metal Workers Local 104 Health Care Plan in the case of Health Care contributions and the Board of Trustees of the Sheet Metal Workers National Pension Trust in the case of National Pension, whichever is greater. Notice of changes in any minimum contributions required for Health Care and/or National Pension shall be mailed post-paid to the owner/member at least thirty days in advance of the effective date of any such change. Any such notice shall be incorporated in this Agreement as if fully set out herein.

SECTION G. OUT-OF-AREA FABRICATION RATE: The wage/fringe rate of journeypersons (apprentices and pre-apprentices are excluded) performing the fabrication of materials in the shop for installation in an area outside the jurisdiction of SMWIA Local Union 104 and Monterey, San Benito, Santa Cruz, Humboldt, Trinity or Del Norte Counties whose rate is lower than other Local No. 104 areas, shall be reduced by an amount not to exceed $4.00 per hour. To assure that no individual or group of individuals is assigned a disproportionate share of such fabrication work, the wage reduction shall be evenly divided among all shop journeypersons. Said shop fabrication differential shall not apply to overtime hours on such work unless a waiver of this provision has been granted by the Union upon a request from the Employer.

SECTION H. Wage/Fringe Schedules for Building Trades in Marin, Sonoma, Mendocino, Lake, San Mateo, Alameda, Contra Costa, Napa,

Solano, Santa Clara and San Francisco Counties shall be attached hereto.

SECTION I. Employer contributions covering the Industry Promotion Funds are in addition to each of the above attached wage and fringe rates (Total Employee Benefit Package) shown in the right hand column.

SECTION J. Effective July 1, 1990, there shall be five (5) classifications of employees under this agreement. Classification is based upon industry seniority under the collective bargaining agreement and the attainment of advance levels and experience and status within the trade. Applicable terms and conditions of this agreement shall be applied in accordance with attained classification. Applications for classification designations shall be submitted to the Financial Secretary of the Union, and upon recommendation of the Financial Secretary, classification designations shall be granted by the Union's Executive Board upon verification that the applicant has attained the requisite experience outlined below. The employee, by designation of classification, authorizes the employer to deduct supplemental pension amounts from his/her wages up to the amount as identified in the attached schedule listing each applicable classification.

Class I employees shall consist of all apprentices.

Class II employees shall consist of all employees who have attained journeyperson status. Traveling journeypersons shall be presumed to qualify for Class II status only, unless sufficient proof of the requisite experience for a higher classification is presented at the time of initial dispatch.

Class III employees shall consist of employees who have performed at least two (2) years at the trade at the journeyperson level or above.

Class IV employees shall consist of employees who have performed at least five (5) years at the trade at the journeyperson level or above.

Class V employees shall consist of employees who within the twelve (12) months immediately preceding application for Class V status have been regularly employed as a subforeperson, foreperson and/or general foreperson under an SMWIA Local 104 collective bargaining agreement for at least six (6) months, or who have performed at least ten (10) years work at the trade at the journeyperson level or above.

Each employee shall submit to the Financial Secretary of the Local Union any classification change request no later than December 1 of each year. Upon approval by the Union, such classification shall be effective the following January 1. The Union shall notify the Employers of the approved classification of each journeyperson on or before December 10. Any Employer not so advised shall effective January 1 of the following year contribute for such employees as either Class I or Class II, dependent upon appropriate apprentice or journeyperson status and such Classification shall continue through December 31. Classification change notifications shall be in writing on an approved form and in accordance with the rules and regulations adopted by the Executive Board of the Union and approved by the Bay Area Association of SMACNA Chapters. Upon notification by the Union to the Employer of an approved classification change, the employer shall pay wages and fringe contributions at the approved classification level unless and until notified by the Union of a classification change. In no event, however, shall a classification change be implemented except by proper notification from the Union, and no more than one (1) classification change may be effected during any contract year, and shall be effective as of January 1 provided the Employer receives notice of such change on or before the immediately preceding December 10.

## ITEM 2. FOREPERSON AND GENERAL FOREPERSON

SECTION A. FOREPERSONS shall receive a minimum of ten percent (10%) above the Class II journeyperson gross taxable hourly rate of pay. GENERAL FOREPERSONS shall receive a minimum of fifteen percent (15%) above the Class II journeyperson gross taxable hourly rate of pay.

SECTION B. [NORTH BAY, SAN FRANCISCO, SANTA CLARA ~ Employees working under the provisions of this Agreement shall not accept direction or instruction from or recognize the authority of anyone other than the Employer, his/her designated representative, or a journeyperson sheet metal worker who is designated and paid as a foreperson or general foreperson.]

SECTION C. [NORTH BAY, SAN FRANCISCO ~ Each shop employing more than three (3) sheet metal workers (journeypersons and apprentices) shall have a journeyperson sheet metal worker who is designated and paid as FOREPERSON.]

SECTION D. [NORTH BAY, SAN FRANCISCO ~ On a jobsite with five (5) or more employees, one (1) journeyperson sheet metal worker shall be designated and paid as FOREPERSON. Additional FOREPERSONS shall be designated and paid for each additional five (5) employees on the job. In addition, whenever a journeyperson sheet metal worker is designated to supervise five (5) or more employees on more than one (1) jobsite, he/she shall be paid as foreperson.]

SECTION E. [NORTH BAY, SAN FRANCISCO ~ A GENERAL FOREPERSON is a journeyperson sheet metal worker with two (2) or more FOREPERSONS under his/her direction.]

SECTION F. [NORTH BAY, SAN FRANCISCO ~ Where two (2) or more FOREPERSONS are used on a single job, there shall be a journeyperson sheet metal worker who is designated and paid as GENERAL FOREPERSON.]

SECTION G. [NORTH BAY, SAN FRANCISCO ~ All jobsites shall have a designated and paid FOREPERSON regardless of ratio, unless there is daily FOREPERSON supervision. Any journeyperson responsible for the directing of other journeypersons and apprentices shall be paid FOREPERSON's wages when directions include coordinating and supervising installations normally engaged by FOREPERSONS.]

SECTION H. [NORTH BAY, SAN FRANCISCO ~ A journeyperson sheet metal worker who has the responsibility for a job with an out-of-town contractor shall be paid FOREPERSON'S wages.]

SECTION I. [NORTH BAY, SAN FRANCISCO ~ Whenever a FOREPERSON or GENERAL FOREPERSON is required to be employed pursuant to the provisions of this Agreement and the FOREPERSON or GENERAL FOREPERSON is not on the job because of illness or vacation, he shall be replaced for the duration of his absence.]

SECTION J. [SANTA CLARA ~ On jobs of four (4) or less than eleven (11) persons, one (1) person shall be appointed FOREPERSON. On jobs of eleven (11) persons and over, one (1) person shall be appointed FOREPERSON for each ten (10) persons or fraction thereof.]

SECTION K. [SANTA CLARA ~ Any journeyperson responsible for the directing of other journeypersons shall be paid as FOREPERSON regardless of the number of journeypersons for jobs of three (3) days duration or over. If orders are to be given to the journeypersons by anyone other than the owner of the shop, or his/her authorized representative, they shall be transmitted to the FOREPERSON and he/she shall direct the journeypersons in carrying out the order.]

SECTION L. [SANTA CLARA ~ A journeyperson sheet metal worker in charge of two (2) or more FOREPERSONS shall be a GENERAL FOREPERSON and shall receive no less than the wage schedule shown.]

SECTION M. [ALAMEDA/CONTRA COSTA, SAN MATEO ~ 1. JOBSITE FOREPERSON: One person shall be appointed FOREPERSON for every nine (9) persons or major fraction thereof including the FOREPERSONS employed by any one company or contractor and he/she shall work for wages noted in this Item 2, Section A.

2. SHOP FOREPERSON: A shop FOREPERSON shall be designated by an Employer when there are five or more Employees employed in the shop on a regular basis, or when there are four or more employees, provided that two of those employees are journeypersons. The rate of pay for SHOP FOREPERSON shall be 10% above the Class II journeyperson gross taxable hourly wage rate.

3. GENERAL FOREPERSON: There shall be one GENERAL

FOREPERSON at the jobsite for every three (3) regular forepersons and he/she shall work for wages noted in this Item 2, Section A.

4. SUB-FOREPERSON: On jobsites with 3 or 4 persons a SUB-FOREPERSON shall be named and he/she shall work for straight wages, plus a minimum of 5% of the Class II journeyperson gross taxable hourly wage rate.]

## ITEM 3. VACATION-HOLIDAY-SAVINGS PLAN

**ALL EMPLOYEES COVERED BY THIS AGREEMENT SHALL BE GRANTED A YEARLY TWO WEEK PAID VACATION AND DESIGNATED PAID HOLIDAYS THROUGH AN ACCUMULATED SAVINGS ACCOUNT PLAN SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

SECTION A. In order that taxes will be paid each week, the gross taxable wages shall include the Vacation-Holiday-Savings in the amount shown in the aforementioned wage/fringe schedules in Item 1 of this Addendum One. After normal tax deductions are made from the weekly gross wages, the Employer shall withhold the full amount (minimum rates shown in the aforementioned schedules) of Vacation-Holiday-Savings in trust, up to and including the last pay period of the month, and shall then deposit said savings with a designated institution as provided in the Deposit Agreement. The weekly check stub shall indicate the amount of savings withheld. Upon receipt of these monies (timely and accurate negotiable check or cash) and the properly completed report form by the Trust, the Employer shall have no further responsibility for same. The designated institution shall maintain an individual account for each employee and said employee may withdraw his/her funds upon his/her request and signature.

SECTION B. It is understood and agreed that these monies are allocated as part of wages received each week, and withholdings are made in the form of a Vacation-Holiday-Savings for the exclusive benefit of the employee. Payment of these savings to the employee, upon termination of employment, shall in no way interfere with his/her right to draw unemployment benefits from any state, or seek employment immediately as outlined in the Hiring Hall facilities.

SECTION C. [NORTH BAY, SAN FRANCISCO, ALAMEDA/CONTRA COSTA, SAN MATEO ~ Vacation time shall be taken at a time mutually agreeable to the Employer and the Employee.]

## ITEM 4. HOURLY FRINGE CONTRIBUTIONS.

The Bay Area Association shall appoint all employer trustees to the Local 104 fringe benefit funds that heretofore were appointed by the affiliated SMACNA Chapters

SECTION A. UNION DUES CHECK OFF FUND. In order that taxes will be paid each week, the gross taxable wages shall include the Union Dues Check Off monies in the amount shown in the Wage and Fringe Schedules. After normal tax deductions are made from the weekly gross taxable wages, each Employer agrees to withhold the full amount in trust, up to and including the last pay period of the month, and shall then deposit said check off monies with a bank or other party as provided in Item 4, herein, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement. The weekly check stub shall indicate the amount withheld. Upon receipt of these monies (timely and accurate negotiable check or cash), and report by the bank, the Employer shall have no further responsibility for same. Each employee, in conformance with the Labor-Management Relations Act of 1947, as amended, shall give the Employer, or have on file with Local 104, written authorization for such deduction. Said payment shall be made to the Administrator through such bank or other party at such place, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement. Dues to be checked-off pursuant to this Section shall include all Dues Check Off obligations.

SECTION B. HEALTH CARE PLAN. Each Employer shall contribute to the Administrator/Trustees of the Sheet Metal Workers Local 104 Health Care Plan, the sum designated in the Wage & Fringe Schedule, for each hour worked by each employee covered by this Agreement, including overtime and as further provided in this Item 4. Notwithstanding the above, the employer shall contribute on behalf of each employee employed in a clas-

sification required to be enrolled in Plan 2 (or its successor) of the Health Care Plan the hourly amounts shown for all actual hours worked during the first and last months of employment and for actual hours worked or the minimum monthly hours set by the Health Care Plan trustees (whichever is greater) for all other months during which the employee is employed. Said payment shall be made to the Trustees through such bank or other party at such place, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement. This plan shall be administered as provided in the established Trust Agreement.

[SANTA CLARA ~ In the event that Trustees of the Health Care Plan deem it necessary to increase payments to this fund, the Employer agrees to abide by and contribute the necessary increase, PROVIDED THAT: in order to bind Sheet Metal and Air Conditioning Contractors National Association, Independent Contractors, or other bargaining group to any such increase, the Trustees must first give the Sheet Metal and Air Conditioning Contractors National Association, Independent Contractor, or other bargaining group of said District, written notice of their intent to increase such payments not less than ninety (90) days prior to the effective date of such increase.]

SECTION C. PENSION PLAN. Each Employer shall contribute to the Sheet Metal Workers Pension Trust Fund of Northern California, the sum designated in the Wage & Fringe Schedule, for each hour worked by each employee covered by this Agreement other than owner/member employees as defined in Item 1 F. hereof, including overtime and as further provided in this Item. In lieu of the sums set forth herein, as and for owner/members who are sole proprietors, or partners, such sums shall instead be added to the amounts required to be paid as dues check off obligations, in accordance with Section A above for owner/members. Said payment shall be made to the Administrator/Trustees through such bank or other party at such place, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement. This plan shall be administered as provided in the established Trust Agreement.

SECTION D. NATIONAL PENSION PLAN. Each Employer shall contribute to the Trustees of the Sheet Metal Workers National Pension Trust Fund, the sum designated in the Wage & Fringe Schedule, for each hour worked by each employee covered by this Agreement other than owner/members as defined in Item 1 F. hereof, including overtime and as further provided in this Item 4. In lieu of the sums set forth herein, as and for owner/members who are sole proprietors, or partners, such sums shall instead be added to the amounts required to be paid as dues check off obligations, in accordance with Section A above for owner/members. Said payment shall be made to the Administrator/Trustees through such bank or other party at such place, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement. This plan shall be administered as provided in the established Trust Agreement.

SECTION E. NATIONAL PENSION COLA FUND. Each Employer shall contribute to the Trustees of the Sheet Metal Workers National Pension COLA Fund, the sum designated in the Wage and Fringe Schedule for each hour worked by each employee covered by this Agreement other than owner/member employees as defined in Item 1 F. hereof, including overtime and as further provided in this Item 4. In lieu of the sums set forth herein, as and for owner/members who are sole proprietors, or partners, such sums shall instead be added to the amounts required to be paid as dues check off obligations, in accordance with Section A above for owner/members. Said payment shall be made to the Administrator/Trustees through such bank or other party at such place, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement. This plan shall be administered as provided in the established Trust Agreement.

Effective July 1, 1995, the sums designated as National Pension COLA will be transferred into the National Pension Plan.

SECTION F. SUPPLEMENTAL UNEMPLOYMENT BENEFIT & SUPPLEMENTAL HEALTH CARE FUNDS. Each Employer shall contribute to the Administrator/Trustees of the Local 104 Supplemental Unemployment Benefit Fund, and the Supplemental Health Care Fund, the sum designated in the Wage & Fringe Schedule for each hour worked by each employee covered by this Agreement other than owner/members as

described in Item 1 F. hereof, including overtime and as further provided in this Item 4. Said payment shall be made to the Administrator/Trustees through such bank or other party at such place, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement. This plan shall be administered as provided in the established Trust Agreement. In lieu of the sums set forth herein as and for SUB/SHC contributions, for owner/members such sums shall be added to the amount required to be paid as dues check off obligations in accordance with Section A of Item 4.

SECTION G. LOCAL 104 SUPPLEMENTAL PENSION FUND. Every individual employer shall pay the sum designated as Supplemental Pension Fund for each classification of employee described in Item 1, Section I of this agreement and shall pay wages for each such classification in accordance with the wage and fringe schedule adopted pursuant to Item 1, Section A hereof and as amended from time-to-time in accordance with this agreement. The sum designated as Supplemental Pension Fund shall be paid, as shown under Item 1, for each hour worked including overtime and as further provided in this Item 4 and Item 7.C, for each employee covered by this agreement other than, effective January 1, 1991, owner/members as described in Item 1 F hereof who are proprietors or partners. In lieu of the sums set forth herein, effective January 1, 1991 as and for owner/members who are sole proprietors, or partners, such sums shall instead be added to the amounts required to be paid as dues check off obligations, in accordance with Section A above.

Not withstanding any provision herein to the contrary, the contribution levels to the Pension Fund provided herein shall not cause the Plan to be in violation of Section 415 of the Internal Revenue Code (and any other sections of the Code); if necessary, adjustments to the contribution rates shall be agreed to by the Union and the Contractor to comply with the Code. The Employer shall accrue the amount owed and forward it monthly, along with the monthly detailed data on report forms provided. This plan shall be administered as provided in the established Trust Agreement.

SECTION H. LOCAL 104 TRAINING FUND. Effective July 1, 1995 there shall be one central training fund for all areas with all training fund contributions directed into one fund as of July 1, 1995. The existing training funds shall be merged with all assets and liabilities pooled.

1. The parties have established an Agreement and Declaration of Trust for the Sheet Metal Workers' Local 104 and Bay Area Industry Training Fund (the "Fund"). This Fund shall exist for the sole purpose of funding the apprentice training program, and any programs established by the Trustees of the Fund for the training and upgrading of journeypersons. The Fund shall be administered by a Joint Board of Trustees, in accordance with the provisions of the Taft-Hartley Act and all other applicable Federal and State Laws, composed of any equal number as the committee may deem necessary, representing the Union (Labor) and the Employer (Management). Sheet Metal Workers Local No. 104 shall appoint the Labor Representatives. The Bay Area Association of Sheet Metal Contractors shall appoint the Employer Representatives. Written notice of such appointments (or replacements thereof) shall be given to the parties or their associations and the Fund administrator.

2. The Agreement and Declaration of Trust referred to herein shall become a part of this Addendum as if set forth in full herein. All parties to this Addendum agree to be bound by the Agreement and Declaration of Trust establishing the Fund and by all amendments thereto as may be made from time to time and hereby designate as their representative on the Board of Trustees as are named, together with any successors who may be appointed pursuant to said Agreement.

3. Each Employer shall contribute to the Administrator/Trustees of the Sheet Metal Local 104 and Bay Area Industry Training Fund, the sum designated in the wage and fringe schedule for each hour worked including overtime by each employee covered by this Agreement through such bank or other party at such place, in such manner and on such report form as designated by the signatory parties of this Agreement.

4. The Trustees for the Local 104 and Bay Area Industry Training Fund shall expend these Training Fund contributions as outlined in the Trust Agreement for the establishment and maintenance of training and educational programs as may be agreed upon from time to time by said Trustees, for all classification of employees covered by this bargaining agreement and/or any other approved bargaining agreements.

5. It is further agreed that the Trustees of the Local 104 and Bay Area Industry Training Fund shall transmit to the Trustees of the National Training Fund, and the National Energy Management Institute, on a monthly basis the designated amounts from each hour's contribution received under the provisions of this Agreement. This Fund shall be administered as provided in the established Trust Agreement.

6. Pursuant to the Apprentice Organizing Program, the Apprenticeship Organizer Fund established within the jurisdiction of Sheet Metal Workers' International Association, Local Union No. 104 shall be utilized to effectively pursue organization efforts by all means available, including but not limited to, apprentices as organizers. It shall not be a violation of this Addendum for apprentices indentured to the Local 104 and Bay Area Industry Training Fund to be granted leave of absence for a period not to exceed one semester for the purpose of participating in the Apprentice Organizing Program sponsored by the Union.

SECTION I. INDUSTRY FUND. There shall be area wide Industry Fund administration effective January 1, 1995 called the Bay Area Industry Promotion Fund. Effective January 1, 1995, the Bay Area Industry Promotion Fund contribution rate shall be $0.45 per hour.

Each Employer shall contribute to the Administrator/Trustees of the Bay Area Industry Fund, the sum designated as Industry Fund for each hour worked by each employee covered by the terms of this Agreement, pursuant to the wage/fringe schedule attached hereto, including overtime and as further provided in this Item 4. Said payment shall be made to the Administrator/Trustees through such bank or other party at such place, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement.

## ITEM 5. PAYMENTS TO FUNDS & BONDING

SECTION A. The amount of the payment to each of the Funds mentioned in Items 3 and 4 above, shall be computed on the basis of each hour worked by each employee, including overtime on all work covered by this Agreement. Contributions to these funds (1- Vacation/Holiday, 2-Dues Check-off, 3-Health Care, 4-Northern California Pension Fund, 5-National Pension Fund, 6-Local Supplemental Pension Fund, 7-SUB/SHC, 8-SMO-HIT, 9-Training Fund, 10-Industry Funds) provided herein shall not be duplicated on covered employees sent into this contract area from another contract area. However, if there is a difference in the amount of the hourly contribution, such difference shall be paid to the employees directly involved, except in the case of the Industry Promotion Funds and the Training Funds, which difference shall be paid to the jobsite Industry Promotion and Training Funds.

SECTION B. All of said payments shall be made no later than the 10th day of each month covering the payroll periods ending in the last previous month. Such payments shall be made through such bank or other party at such place, in such manner and on such report form as designated by the signatory parties to this Agreement. All funds should be reported on a single monthly report form and covered by a single check or draft payable to the designated bank or other party. For collection and transmittal purposes, these monthly reports together with all contributions, shall be forwarded on a timely basis to the bank or other party. The bank or other party shall disburse the monies payable to the Trustees of each fund and forward same together with a copy of the monthly report form.

SECTION C. All parties hereto recognize and agree that prompt payment to each of the Funds mentioned in Item 4 is essential to the fair and efficient administration of benefits under each Fund and the maintenance of benefits under each Fund. They further recognize that it would be extremely difficult, if not impossible, to fix actual damages and expenses to each Fund which will result from the failure of an Employer to make timely contributions or reports. Therefore, when an Employer fails to make any of said monthly contributions or fails to submit the properly complet-

ed monthly reports postmarked by the 20th day of the month in which the contribution is due, such Employer shall be assessed an amount equal to: (a) the liquidated damages provided in each of the applicable Trust Agreements; or (b) if no liquidated damages provision exists in the applicable Trust Agreement(s) or no Trust Agreement exists for the Fund, the greater of ten percent (10%) of the delinquent contribution or $25.00 per Fund as liquidated damages resulting from the delinquency. At any time when an Employer is delinquent in submitting the contribution or a properly completed report, the Union may remove the employees, from any shop or job of the delinquent Employer, and refuse to furnish employees to such shop or job. The Employer agrees to pay all employees so removed, their regular wages (not to exceed ten (10) days straight time pay) until such time as all delinquent payments and proper reports are received. The Employer agrees that in the event it is delinquent, it will pay all reasonable costs incurred, by Sheet Metal Workers' Local Union 104 and the Trust Funds in connection with collection of the delinquency, including, but not limited to, court costs and reasonable attorney fees.

Unless the time limit is extended, for good cause, by mutual agreement between the Association and the Union, the liquidated damages for delinquent contributions shall be included with said contributions and the properly completed monthly report.

SECTION D. BONDING/SECURITY. All Employers signatory hereto, or who desire to perform work within the jurisdiction of Local 104, as a condition precedent to the performance of such work and/or the dispatch of employees pursuant to this Agreement, shall post adequate security to ensure the prompt payment of the following obligations arising under this Agreement: (1) payment of dues check-off obligations; (2) vacation and holiday payments; and contributions to (3) the Sheet Metal Workers Pension Trust of Northern California; (4) Sheet Metal Workers Local 104 Health Care Plan, (5) Sheet Metal Workers Local 104 Supplemental Pension Plan; (6) Sheet Metal Workers National Pension Plan; (7) Sheet Metal Workers Local 104 Supplemental Unemployment and Supplemental Health Care Fund; (8) the Sheet Metal Local 104 and Bay Area Industry Training Fund covered by this Agreement; and (9) the Sheet Metal and Air Conditioning Contractors National Association Industry Fund covered by this Agreement. The security shall, in addition, cover all liquidated damages, and cost of collection including but not limited to audit fees and attorney's fees.

The security required herein shall take the form of one surety bond or cash deposit written to specifications agreed upon between Local 104 and SMACNA. Either a Bond or cash shall be deposited with ATPA, as Custodian, 1640 South Loop Road, Alameda, CA 94502 or P.O. Box 23170, Oakland, CA 94623-0170 and shall cover all bargaining unit employees of the employer regardless of which Local 104 agreement(s) governs the performance of work by such employees.

The minimum security to be posted shall be not less than $5,000.00; however, if the average number of unit employees employed by an Employer is more than five but less than eleven, the minimum security shall be $15,000.00. If the average number of unit employees employed by the Employer is in excess of ten, then the security shall be $25,000.00. The determination of the average number of employees, in the instance of a new employer, shall be deemed the number of employees required for its first job(s) within the jurisdiction of Local 104. Thereafter, the determination of the average number of employees shall be recalculated from time to time by the Custodian, but may not be calculated on a period of less than six (6) months.

At any time the Employer is notified in writing by the Custodian, based upon calculations described herein, that the Employer is required to post security in excess of that which it had heretofore posted, such new or additional security shall be posted by the Employer with the Custodian within thirty (30) days of such notice in order for the Employer to remain in compliance with this section. In the event of a delinquency which requires collection of any or all of security posted pursuant to this section, the Custodian may notify the Employer to post security equal to three months average payments required of the Employer based upon its peak employment month during the preceding year. Upon notice such security shall be

posted within five (5) days.

The calling of surety in the event of delinquency shall be in accordance with the rules set forth by the Trustees of Northern California Pension Plan.

In the event of collection of sums which are not sufficient to cover all delinquent obligations hereunder, sums collected shall be distributed in the following order of priority.

| | |
|---|---|
| 1. Vacation | 6. Health Care |
| 2. Dues Check-Off obligations | 7. SUB/SHC |
| 3. Supplemental Pension | 8. Training |
| 4. Northern California Pension | 9. SMOHIT |
| 5. National Pension | 10.Industry Fund |

SECTION E. TWO-DAY NOTICE: It is also understood that the employer shall be entitled to a two working day notice before withdrawal of employees (Sec. C of this Item 5) can take place. The Union will send said notice.

SECTION F. The Trust Agreements and Deposit Agreement (each as amended from time to time) which create or apply to (1) Vacation-Holiday, (2) Dues Check-off, (3) Health Care, (4) Northern California Pension Fund, (5) National Pension Fund, (6) Local Supplemental Pension Fund, (7) SUB/SHC, (8) SMOHIT, (9) Training Fund, (10) Industry Funds are each referred to and made part of this Agreement and each employer bound by this agreement agrees to be bound by all of the terms and provisions of the Plans and Trust Agreements which govern each of the abovementioned Funds or Plans, including any amendments to such documents heretofore or hereafter adopted. Each Employer further agrees (a) that the EMPLOYER Trustees appointed pursuant to the terms of the Agreements and Declarations of Trust, and their successors, are and shall be his/her representatives; (b) that the Employer approves and consents to the appointment of the Trustees heretofore appointed and hereafter selected as provided in said Agreements; (c) the Employer ratifies, confirms, approves and consents to the acts of said Trustees or their successors heretofore and hereinafter taken in their creation and administration of said Trusts. All of these things referred to in Section F of Item 5 shall be in accordance with other provisions of this Agreement.

## ITEM 6. NOTARIZED CERTIFIED PAYROLL

SECTION A. [NORTH BAY, SAN FRANCISCO, ALAMEDA/CONTRA COSTA, SAN MATEO] – Any Employer signatory to, or working under the provisions of this Agreement shall, upon the mutual request of the Union and the Association, produce a notarized certified payroll of his/her employees, providing a breakdown covering gross wages, fringe benefits, travel compensation, subsistence and any other negotiated fund or cost item, for all hours worked under the provisions of this agreement, or on the fabrication for and/or installation of any specified job or jobs within this contract area. The Chairman and the Executive Manager, or his/her designee, for the Bay Area Association of SMACNA Chapters and the Business Manager and the Area Business Representative for Local 104 are hereby authorized and designated as the parties to act upon such request.

SECTION B. Any request for a certified payroll shall be verified by both parties within 24 hours by an exchange of written communication, relating details and action taken. The involved Employer shall be given written notice of approval of such a request, by both parties.

SECTION C. Such certification shall be supplied at the expense of the individual employer by a certified public accountant within five (5) working days after receipt of the written notice, unless an extension of this time is mutually agreed upon, in writing, by all parties.

SECTION D. The provisions of this Agreement pertaining to wages and fringes due employees fabricating materials for installation within the jurisdiction of Local 104 or pertaining to wages and fringes and travel and subsistence to employees performing field work in said jurisdiction and those provisions relating to the sub-contracting of said work or purchase of materials shall be rigidly enforced.

And, the requirement that journeypersons fabricating work for installation within the area of SMWIA Local 104 is further clarified to provide that

# MEMORANDUM OF UNDERSTANDING

by and between

## BAY AREA ASSOCIATION OF SMACNA CHAPTERS

and

## SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION LOCAL 104

In March, 1999, the Sheet Metal Workers' International Association Local Union No. 104 ("Union") and the Bay Area Association of SMACNA Chapters ("Association") entered into a Memorandum of Understanding ("1999 MOU") to amend and extend their collective bargaining agreement ("CBA"). Pursuant to Item 9 and Exhibit I of the 1999 MOU, the Union and the Association agreed to preservation of work language.

Subsequently, the Sheet Metal Workers National Joint Adjustment Board ("NJAB") issued decisions involving other Sheet Metal local unions. Based on those decisions, certain contractors signatory with Local 104 took positions contrary to Local 104 regarding the application of the second paragraph of Exhibit I. The Union and Association thereafter filed grievances regarding their respective positions concerning that paragraph.

In order to resolve those grievances, the parties have agreed to renegotiate and amend their 1999 MOU and their 1999-2006 CBA as set forth below. Unless altered by this Memorandum of Understanding, all conditions of the 1999 MOU and the 1999-2006 CBA shall remain the same for the duration of the current CBA.

*hand-delivered to C R Schellenger by CWS*

1.      Except as specifically provided in paragraph 2 below, the new preservation of work language contained in Exhibit II attached hereto shall apply to all fabrication work for which an employer, covered by Exhibit II, submits a bid on or after June 1, 2001.

2.      Those employers against whom Local 104 has pending grievances regarding the second paragraph of Exhibit I to the 1999 MOU, who currently have fabrication facilities located outside of the geographical jurisdiction of Local 104 (i.e., Scott Company, Air Conditioning Company, Control Air, Cal Air, Western Allied and Valley Sheet Metal/Frank M. Booth, Inc.; but not Environmental Systems), shall each have the right to make an election of whether to be covered by the new preservation of work language contained in Exhibit II attached hereto.

(a)     Any of the six above-named employers that does not wish to be covered by the new preservation of work language shall so notify the Union and the Association, in writing, prior to June 1, 2001. Any employer that exercises that option shall be deemed to have made a request to the Union and the Association to no longer be a Local 104 signatory employer, and such request shall be deemed to have been accepted by the Union and the Association. Immediately upon giving such written notice, the employer shall cease to be a Local 104 signatory contractor, and shall instead be treated for all purposes under the CBA, including but not limited to Addendum One, Item 27, sections C, H, I and O, as a non-signatory employer, from outside of, and who does not have its principal place of business within, Local 104's jurisdiction. Nothing contained in this

Memorandum of Understanding shall be construed as meaning that an employer, which exercises the option contained in this subparagraph, is not bound to the Local 104 CBA as an out-of-area contractor when it performs work within Local 104's jurisdiction in accordance with the Standard Form of Union Agreement.

(b)    Any of the six employers named in Paragraph 2 that has not actually provided the written notice specified above to both the Union and the Association prior to June 1, 2001, shall be bound by the new preservation of work language contained in Exhibit II attached hereto.  That language shall apply to any such employer as of June 1, 2002, with regard to any work for which it submitted a bid on or after June 1, 2001.

(c)    The election available to the six employers named in Paragraph 2, and the option either to become an employer not signatory with Local 104, or to remain an employer signatory with Local 104 but not to have the language of Exhibit II attached hereto be applicable until June 1, 2002, shall not be deemed a "more favorable condition" for purposes of Addendum One, Item 40, of the CBA.

3.    In order to help preserve and protect fabrication work that historically has been performed by employees who may work under the CBA, a joint labor-management committee will meet not later than thirty (30) days after the ratification of this Memorandum of Understanding to study the feasibility of establishing, through the JAC or otherwise, a fabrication facility within the jurisdiction of Local 104 that will provide fabrication training and experience

for employees who may be covered by the CBA. If the Association and Union mutually agree that such a facility is feasible, the employers shall add ten cents (10¢) per hour to the monetary package to assist in the creation of such a facility.

4.    Effective July 1, 2001 through June 30, 2002, the Union, through its Wage Equality Program, will afford relief for Local 104 journeypersons on fabrication hours for projects located outside the geographical jurisdiction of Local 104. Such relief will be afforded to signatory Local 104 contractors who bid as a prime, and will not be afforded to any contractor who bids for fabrication work only. The total amount of such relief provided to all Local 104 contractors will not exceed twenty cents (20¢) per hour for all applicable hours worked in the jurisdiction of Local 104 between June 1, 2001 and May 31, 2002. The relief granted with respect to any project shall not exceed the differential between the Local 104 CBA's wage and fringe package and that provided for in the CBA of the home local where the project is located.

5.    Effective June 1, 2001, all Local 104 geographical areas that are not on nighttime apprentice training shall revert to nighttime apprentice training as quickly as possible.

6.    Effective June 1, 2001, any additional funding required by the Bay Area Training Trust Fund shall, upon the recommendation of the Chairman and Co-Chairman, be split equally between Local 104 and the Association.

7.    The voluntary forty (40) hour workweek clause shall remain as it is in the parties' CBA.

8.     Upon the signing and ratification of this Memorandum of Understanding by the parties, the Union and the Association shall dismiss their respective grievances and requests for arbitration arising from Local 104's claim that the seven employers listed above were in violation of the second paragraph of Exhibit I to the 1999 MOU.  In addition, the Union shall not file any grievances, and shall dismiss any grievances it has filed, against any other employer based upon an alleged violation of Exhibit I to the 1999 MOU.  Provided, however, that if any employer (including the seven named above) claims not to be bound to this Memorandum of Understanding, or directly or indirectly, challenges, or supports any challenge, to anything contained in this Memorandum of Understanding, before any court, administrative agency or other body, including but not limited to any challenge to the new preservation of work language contained in Exhibit II attached hereto, the Union may file or reinstitute such a grievance as to that employer and the grievance shall be considered timely (with all time-based defenses being deemed waived).

9.     Prior to ratification of this Memorandum of Understanding, the Association shall send to all employers signatory to the Local 104 CBA a copy of this Memorandum and its Exhibit.  The Association shall request that, by seven (7) working days prior to the ratification vote, any employer that believes it is not bound to this Memorandum of Understanding shall notify the Association in writing and set forth therein its reasons for so believing.  Before the Union membership votes whether to ratify this Memorandum of Understanding, the Association

shall provide the Union with the names of any employers who do not believe themselves bound

to this Memorandum of Understanding and a copy of their written notice to the Association.

10.    This Memorandum of Understanding shall become effective upon ratification by

the Union and the Association.   If either party does not timely ratify this Memorandum of

Understanding for any reason by May 12, 2001, it shall be null and void and the parties shall be

free to proceed with their work preservation grievances.

11.    This document contains all of the terms of the parties' agreement to amend the

1999 MOU and the CBA, and neither party may rely on any implied terms or previous oral

representations.

12.  All the terms and conditions set forth in this Memorandum of Understanding shall be

governed by Addendum One, Item 41 (General Savings Clause) of the 1999-2006 CBA.

DATED: _5/29/01_            SHEET METAL WORKERS'
                            INTERNATIONAL ASSOCIATION
                            LOCAL UNION NO. 104

                    By: _____
                        Bruce Word, Business Manager/President

DATED: _____        BAY AREA ASSOCIATION OF
                            SMACNA CHAPTERS

                    By:_____
                        Anthony A. Asher, General Counsel

EXHIBIT II

To protect and preserve for all workers who may be covered by this Agreement, all work that has been performed and all work covered by this agreement, and to prevent any device or subterfuge to avoid the protection and preservation of work, it is agreed that all the work requiring fabrication shall be performed within the geographical jurisdiction of Local 104, either in the shop or on the job site, by workers who may be employed under this Agreement.

This preservation of work clause shall be enforceable only as to employers that have signed a Standard Form of Union Agreement ("SFUA") which includes the Addendum between Local 104 and the Bay Area Association. This clause shall not be enforceable as to any employer that may become bound to the Addendum between Sheet Metal Workers' Local Union No. 104 and the Bay Area Association solely as a result of Article VIII, Section 6 of the SFUA.

It is agreed that this preservation of work clause and the equalization clause of Section 2 of Article VIII, Section 2 of Article II, and Section 1 of Article III, shall not be applicable to the manufacture for sale to the trade or purchase of the following 14 items:

1. Ventilators
2. Louvers
3. Automatic and fire dampers
4. Radiator and air conditioning unit enclosures
5. Fabricated pipe and fittings for residential installations
6. Mixing (attenuation) boxes
7. Plastic skylights
8. Air diffusers
9. Grilles
10. Registers
11. Sound attenuators
12. Chutes
13. Double-wall panel plenums
14. Angle rings

It is further agreed this preservation of work clause, shall not be applicable to Residential Work; Service Work; Industrial Work; Kitchen Equipment Work; Siding and Decking Work; Flex or Spiral Pipe (Round and Oval); Pipe Lock and Double-Wall Ductwork.

This preservation of work clause shall be effective with work bids submitted on or after June 1, 2001.

MEMORANDUM OF UNDERSTANDING
May 15, 2001 (10:24AM)                                                                                    Page 7 of 7

# MEMORANDUM OF UNDERSTANDING

by and between

## BAY AREA ASSOCIATION OF SMACNA CHAPTERS

and

## SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION LOCAL 104

The current Collective Bargaining Agreement dated July 1, 1994 through June 30, 1999 ("CBA") by and between Bay Area Association of SMACNA Chapters ("Association") and Sheet Metal Workers International Association Local 104 ("Union") shall be amended pursuant to the following conditions. All other conditions of the current contract, unless altered by this Memorandum of Understanding, shall remain the same. The agreement shall be extended to June 30, 2006.

1.  The total economic monetary package shall be increased pursuant to the contract for the Commercial Building Trades Journeyperson as follows:

| | |
|---|---|
| 7/1/99 | $1.25 |
| 7/1/00 | $1.25 |
| 7/1/01 | $1.25 |
| 7/1/02 | $1.00 |
| 7/1/03 | $1.00 |
| 7/1/04 | $1.00 |
| 7/1/05 | $1.10 |

The total economic monetary package shall be increased pursuant to the contract for Light Commercial Journeypersons, Residential Journeyperson/Air Conditioning Specialist and Material Expediter as follows:

| | Light Commercial Journeyperson | Residential Journeyperson/ A/C Specialist | Material Expediter |
|---|---|---|---|
| 7/1/99 | $1.05 | $0.65 | $0.39 |
| 7/1/00 | $1.05 | $0.65 | $0.40 |
| 7/1/01 | $1.05 | $0.65 | $0.40 |
| 7/1/02 | $1.00 | $0.65 | $0.31 |
| 7/1/03 | $1.00 | $0.65 | $0.32 |
| 7/1/04 | $1.00 | $0.65 | $0.32 |
| 7/1/05 | $1.00 | $0.65 | $0.35 |

CWS
10-16-01
Smw104

CRS. HVAC
10-17-01
AWS.



a) Pre-Apprentice wages shall be adjusted as per the existing contract.

2. The Service Technician contract total package shall be increased pursuant to the contract as follows:

| | |
|---|---|
| 7/1/99 | $1.00 |
| 7/1/00 | $1.00 |
| 7/1/01 | $1.00 |
| 7/1/02 | $0.75 |
| 7/1/03 | $0.75 |
| 7/1/04 | $0.75 |
| 7/1/05 | $0.85 |

a) The current North Bay Service Addendum shall be applied to San Francisco for Residential, Light Commercial and Commercial work, with the following conditions:

In the event a Commercial Service Journeyperson

And/or Apprentice is laid off, no company may

Implement the service contract for Commercial

Work while the layoffs exist. The Union shall

Notify the Association when this situation occurs.

b) The Santa Clara area shall have the North Bay Service Addendum for Residential work only.

3. The parties agree to include the excess benefit language as in the current CBA as approved by the Trustees of the Local 104 Joint Funds.

4. Where contractors provide fabrication out of the area of Local 104, they may utilize in the shop the following ratios: one Journeyperson; one Apprentice; one Pre-Apprentice for such work.

2

5.    The Employer shall have a right to name call Pre-Apprentices from the out-of-work list as long as they alternate their selection from the out-of-work list chronologically on a one on one basis. The first selection shall be by the Employer.

6.    The parties agree to amend the current Local Siding & Decking contract so that it is an industrywide agreement by and between the Association and Union covering the geographical jurisdictions of Local 104. The current contractors signatory to the Siding and Decking contract shall not be required to execute the Association Agreement.

7.    Any areas currently working under the standard 40-32 work schedule shall be included in the current language of North Bay where a sheet metal worker may voluntarily work a 40-hour work week.

8.    San Francisco shall remain on the five-day, seven-hour day. However, in the event the United Association and/or IBEW change their 35-hour work week, the Union and Association shall agree to meet to discuss amending the 35-hour work week via the task force.

9.    The Preservation of Work Fund language (see Exhibit 1) shall be included in the CBA.

10.    An additional holiday shall be added for all employees covered hereunder which shall be Martin Luther King Day.

11.    The contract early starting time shall change from 7:00 a.m. to 6:00 a.m.

12.    The Employer agrees to provide a 10-minute scheduled coffee break in the morning. The coffee break shall be taken at the work station.

13.    Lt. Commercial work shall be increased from $250,000 to $270,000 with the exception of San Francisco. San Francisco shall be increased from $50,000 to $80,000. All

3

other increases shall be by the task force.  These increases shall become effective for all purchase orders with bid dates of July 1, 1999 and thereafter.

14.    Tenant Completion Work shall be increased from $150,000 to $165,000, with the exception of North Bay.  North Bay shall be increased from $220,000 to $242,000 and San Francisco shall be increased from $50,000 to $80,000.  All other increases shall be by the task force.  These increases shall become effective for all purchase orders with bid dates of July 1, 1999 and thereafter.

15.    All the conditions set forth in this Memorandum shall be governed by the separability clause of the current CBA.

SMWIA LOCAL 104

Larry Whiteman, Business Manager
3/1/99

BAY AREA ASSOCIATION OF
SMACNA CHAPTERS

Anthony A. Asher, General Counsel

## EXHIBIT 1

To protect and preserve for the workers covered by this Agreement all work they have performed and all work covered by this Agreement, and to prevent any device or subterfuge to avoid the protection and preservation of work; it is agreed that all the work requiring fabrication shall be performed by employees hereunder, either in the shop or on the job site within the geographical jurisdiction of the union.

In the alternative, where an employer elects to have the work fabricated by the above clause outside of the geographical jurisdiction of Local 104, any differentials in wages and benefits paid to employees in all classifications performing work covered by this Agreement between their home local and those wages and benefits paid under this Agreement, and pursuant to the ratios set forth in this Agreement shall be forwarded to the Sheet Metal Worker's Health Care Fund of Local 104 pursuant to the language of said trust, or to any other Taft-Hartley trust mutually agreed upon by the Business Manager of Local 104 and General Counsel of the Bay Area Association. Any dispute as to the enforcement or interpretation of this clause shall be resolved by binding arbitration by an arbitrator selected by the parties through American Arbitration Association. Said clause shall be enforceable as to the signatory contractor and any fabricator signatory to the Standard Form Union Agreement.

It is agreed that the foregoing shall not be applicable to the manufacture for sale to the trade or purchase of the following items:

1. Ventilators
2. Louvers
3. Automatic and fire dampers
4. Radiator and air conditioning unit enclosures
5. Fabricated pipe and fittings for residential installations
6. Mixing (attenuation) boxes
7. Plastic skylights
8. Air diffusers
9. Grilles
10. Registers
11. Sound attenuators
12. Chutes
13. Double-wall panel plenums
14. Angle rings

It is further agreed that the foregoing shall not be applicable to Residential Work, Service Work, Industrial Work, Kitchen Equipment Work, Siding and Decking Work, Flex, Oval, Pipe Lock and Double Wall Ductwork.

This provision shall be effective with work bids after June 30, 1999.

# SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION
## LOCAL UNION No. 104



| 1939 MARKET STREET | | PHONE (415) 621-2930 |

SAN FRANCISCO, CALIFORNIA 94103
## AFFIRMATION AGREEMENT

The below-named employer and Sheet Metal Workers' International Association, Local Union No. 104 (hereinafter "Union") hereby agree and affirm that they are bound to the Standard Form of Union Agreement, Addenda and Supplement A thereto, effective through June 30, 2006 as negotiated between Sheet Metal Workers' Local 104 and the Bay Area Association of Sheet Metal and Air Conditioning Contractors. Said Agreement is incorporated herein by reference as if set forth in its entirety and the undersigned parties affirm that they are bound by all the terms and conditions contained in said Agreement.

The employer signatory hereto hereby voluntarily recognizes the Union as the majority collective bargaining representative of all employees employed by said employer performing work covered by this Agreement and agrees that the Union has demonstrated that it is the majority representative of such employees in an appropriate collective bargaining unit.

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION
LOCAL UNION NO. 104

By: _____ 10/23/01
    BRUCE WORD, Business Manager/President

Employer: **C R Schellenger HVAC, Inc.**

By: Alexander W. Schellenger
Title: President

Address: **3150 A Highway 128**

City/State/Zip: **Calistoga, CA 94515**

Telephone: **(707) 942-1166**

FAX Number: 707-942-0148

## CONTRACTOR'S LICENSES

No. **800219**    No. _____    No. _____

Classification **C20**    Classification _____    Classification _____