```
ERSKINE & TULLEY
A PROFESSIONAL CORPORATION
MICHAEL J. CARROLL (STATE BAR #50246)
220 Montgomery Street, Suite 303
San Francisco, CA  94104
Telephone:  (415) 392-5431
Facsimile:  (415) 392-1978

Attorneys for Plaintiffs
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE SHEET METAL WORKERS, et al.,<br><br>              Plaintiffs,<br><br>vs.<br><br>C R SCHELLENGER H V A C, INC., etc.,<br><br>              Defendant. | NO. C 08 0306 BZ<br><br>SUPPLEMENTAL DECLARATION OF CARL SANCHEZ IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT |

      I, CARL SANCHEZ, declare:

      1.    I am the Business Representative of Sheet Metal Workers Local Union No. #104 with offices 610 E. Washington St., Suite #C, Petaluma, CA. If called as a witness, I could competently testify to the following facts from my personal knowledge. I am familiar with, and I am the custodian of the books and records of the Local as they relate to C R SCHELLENGER H V A C INC.

      2.    I am advised that C R SCHELLENGER H V A C INC. contends it is not bound by the terms and conditions of the Standard Form of Union Agreement (SFUA Form A-3-89) after June 30, 2006. The pertinent portions of this agreement were attached to my first declaration as Exhibit 1.

SUPPLEMENTAL DECL. OF CARL SANCHEZ IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

1

2. Exhibit 1 at Article XIV, Section 1 provides that the terms of the contract "...shall continue in force and effect from year to year thereafter unless written notice of re-opening is given not less than ninety (90) days prior to the expiration date." C R SCHELLENGER H V A C INC. has not given or received such a notice.

3. Exhibit 1 at Article XIV, Section 4 designates the Union and the Employer Associations (SMACNA Chapters) "...as the respective Labor and Management collective bargaining agents for all persons and firms bound to this Agreement.." "...Each Employer signatory...agrees to be bound by any such renegotiations, modifications...extensions or renewals..."

4. Attached hereto and marked Exhibit 7 are pertinent pages from the renewed contract signed by defendant, negotiated by the union and the SMACNA Chapters effective for the period July 1, 2006 through June 30, 2010. It contains increases in the wages and fringe benefits due for hours worked by covered employees. Defendant paid those higher rates until the last union employee left the company in December 2007. Defendant paid the high fringe benefit rates up until October 1, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 5, 2008 at Petaluma, California.

_____
CARL SANCHEZ

SUPPLEMENTAL DECL. OF CARL SANCHEZ IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
2

# STANDARD FORM OF

# UNION AGREEMENT

AND

ADDENDA THERETO

BETWEEN

## SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION

## LOCAL UNION NO. 104

AND

## BAY AREA ASSOCIATION OF SMACNA CHAPTERS

EFFECTIVE JULY 1, 2006 THROUGH JUNE 30, 2010



SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION
LOCAL UNION NO. 104

2610 CROW CANYON ROAD, SUITE 300
SAN RAMON, CA 94583
925.314.8600

ADDENDUM NUMBER ONE
TO THE
STANDARD FORM OF UNION AGREEMENT

All firms signatory hereto are bound to the Standard Form of Union Agreement, A-1-05, hereinafter "SFUA." This Addendum modifies and/or amends those terms or conditions of the SFUA when firms signatory hereto perform work described by this Addendum. Any contract items not specifically addressed/defined in this Addendum shall remain governed by the terms of the SFUA. The amendments to the applicable SFUA and Addendum Number One, excluding wage/fringe increases effective July 1, 2006, shall become effective for work with purchase orders dated after June 30, 2006.

## ITEM 1. WAGE AND FRINGE SCHEDULE

SECTION A. The following wage/fringe increases shall be allocated as determined by the Local Union No. 104 members working under the terms and provisions of this Agreement. Such allocations shall be made to wages or to existing fringes or to any new funds as may be mutually agreed to by the parties.

### HOURLY WAGE INCREASE

|  | 7.1.06 | 1.1.07 | 7.1.07 | 7.1.08 | 7.1.09 |
|---|---|---|---|---|---|
| Building Trades Journeyperson: | $3.00 | $2.00 | $4.00 | $5.00 | Wage Reopener |
| Material Expediter: | $1.75 | -0- | $1.75 | $1.75 | Wage Reopener |

The Apprentice gross taxable wage shall be the following percentage of the Class II Building Trades Journeyperson gross taxable wage, provided that no Apprentice shall have his/her percentage reduced:

| Bracket | 7.1.06 | 7.1.07 | Bracket | 7.1.06 | 7.1.07 |
|---|---|---|---|---|---|
| 1st | 35% | 40% | 6th | 60% | 60% |
| 2nd | 40% | 40% | 7th | 65% | 65% |
| 3rd | 45% | 45% | 8th | 70% | 70% |
| 4th | 50% | 50% | 9th | 75% | 75% |
| 5th | 55% | 55% | 10th | 80% | 80% |

The contributions for Apprentices to the Funds are made on the following percentages of the Building Trades Journeyperson contribution.

Northern California Pension – 20.7%           National Pension – 58.0%
Local Supplemental Pension – 33.3%

Health Care (Schedule I), Local Training, Scholarship Fund, NEMIC, SMOHIT, and Industry Promotion Fund shall be one hundred percent (100%). Pre-apprentice gross taxable rate of pay shall be thirty percent (30%) of the Class II Building Trades Journeyperson gross taxable hourly wage rate. Payments to Health Care (Schedule II), Vacation-Holiday, Dues Check-off, Training, and Industry Funds will be in accordance with the Agreements between the parties and the applicable Trusts at the rates shown on the Wage and Fringe Schedule.

SECTION B. **PAY PERIOD** - Wages at the established rates specified herein shall be paid weekly, in the shop or on the job, at or before quitting time, no later than Friday or as mutually agreed. The employee may elect electronic deposit or mail to the last known address. The weekly paycheck will be electronically deposited within three (3) days or received by mail/or delivered within four (4) days of the end of the payroll period. If the employee receives their pay by noon the day after the due date, the employee shall receive two (2) hours gross taxable pay and thereafter, eight (8) hours gross taxable pay per day, until the employee is paid in full. However, employees, when discharged, shall be paid in full.

SECTION C. Bargaining unit employees hereunder shall include owner/members. Owner/members are proprietors, partners or corporate owners or officers or anyone participating in the management of the Employer, but who also perform work pursuant to this Agreement and who have applied for and been granted owner/member status by the Union. Owner/members shall pay all fringe contributions and dues on all actual hours worked with the tools, pursuant

to this Agreement, the actual hours worked under the Collective Bargaining Agreement or the minimum contribution hours set from time to time by the Trustees of the Funds stated in this Agreement, whichever is greater. Notice of changes in any minimum contributions required shall be mailed post-paid to the owner/member at least thirty (30) days in advance of the effective date of any such change. Any such notice shall be incorporated in this Agreement as if fully set out herein.

SECTION D. Wage/Fringe Schedules shall be attached hereto.

SECTION E. Employer contributions covering the Industry Promotion Funds are included in the above-attached wage and fringe rates.

SECTION F. **SUPPLEMENTAL PENSION** - Classifications of employees under this Agreement are based upon industry seniority under the Collective Bargaining Agreement and the attainment of advanced levels and experience and status within the trade. Applicable terms and conditions of this Agreement shall be applied in accordance with attained classification. Applications for classification designations shall be submitted to the Financial Secretary of the Union, and upon approval that the applicant has attained the requisite experience outlined below, the employee, by designation of classification, authorizes the Employer to deduct Supplemental Pension amounts from his/her wages up to the amount as identified in the attached Wage and Fringe Schedule listing each applicable classification.

Class I employees shall consist of all Apprentices and Material Expediters.

Class II employees shall consist of all employees who have completed their initial training or employees who have taken and passed a test administered by the Local JATC that would be equal to completing the training for their classification or if an employee were advanced to such classification, per the Agreement, by the Employer; and Material Expediters with more than five (5) years at the trade. Traveling Journeypersons shall be presumed to qualify for Class II status only, unless sufficient proof of the requisite experience for a higher classification is presented at the time of initial dispatch.

Class III employees shall consist of employees who have performed at least two (2) years at the trade beyond the Class II provision(s).

Class IV employees shall consist of employees who have performed at least five (5) years at the trade beyond the Class II provision(s).

Class V employees shall consist of employees who, within the twelve (12) months immediately preceding application for Class V status, have been regularly employed as a Foreperson or General Foreperson under an SMWIA Local 104 Collective Bargaining Agreement for at least six (6) months or who have performed at least ten (10) years' work at the trade beyond the Class II provision(s).

Each employee shall submit by mail to the Financial Secretary of the Local Union any classification change request postmarked no later than November 23 of each year. Upon approval by the Union, such classification shall be effective the following January 1. The Union shall notify the Employers of the approved classification of each employee on or before December 10. Any Employer not so advised shall, effective January 1 of the following year, contribute for such employees at their current classification and such classification shall continue through December 31. Classification change notifications shall be in writing on an approved form and in accordance with the rules and regulations adopted by the Union and approved by the Bay Area Association of SMACNA Chapters. Upon notification by the Union to the Employer of an approved classification change, the Employer shall pay wages and fringe contributions at the approved classification level unless and until notified by the Union of a classification change. In no event, however, shall a classification change be implemented except by proper notification from the Union, and no more than one (1) classification change may be effected during any calendar year, and shall be effective as of January 1, provided the Employer receives notice of such change on or before the immediately preceding December 10.

## ITEM 2. FOREPERSON AND GENERAL FOREPERSON

SECTION A. Forepersons shall receive a minimum of fifteen percent (15%) above the Class II Journeyperson gross taxable hourly rate of pay. General Forepersons shall receive a minimum of twenty percent (20%) above the Class II Journeyperson gross taxable hourly rate of pay.

SECTION B. Employees working under the provisions of this Agreement shall not accept direction or instruction from or recognize the authority of anyone other than the Employer, his/her designated representative or a Journeyperson sheet metal worker who is designated and paid as a Foreperson or General Foreperson.

SECTION C. On jobs of four (4) or less than eleven (11) persons, one (1) person shall be appointed Foreperson. On jobs of eleven (11) persons and over, one (1) person shall be appointed Foreperson for each ten (10) persons or fraction thereof.

SECTION D. Any Journeyperson responsible for the directing of other Journeypersons shall be paid as Foreperson regardless of the number of Journeypersons for jobs of three (3) days duration or over. If orders are to be given to the Journeypersons by anyone other than the owner of the shop or his/her authorized representative, they shall be transmitted to the Foreperson and he/she shall direct the Journeypersons in carrying out the order.

SECTION E. A Journeyperson sheet metal worker in charge of two (2) or more Forepersons shall be a General Foreperson and shall receive no less than the wage schedule shown.

## ITEM 3. VACATION-HOLIDAY-SAVINGS PLAN

**ALL EMPLOYEES COVERED BY THIS AGREEMENT SHALL BE GRANTED A YEARLY TWO-WEEK PAID VACATION AND DESIGNATED PAID HOLIDAYS THROUGH AN ACCUMULATED SAVINGS ACCOUNT PLAN SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

SECTION A. In order that taxes will be paid each week, the gross taxable wages shall include the Vacation-Holiday-Savings in the amount shown in the aforementioned Wage/Fringe Schedules in Item 1 of this Addendum One. After normal tax deductions are made from the weekly gross wages, the Employer shall withhold the full amount (minimum rates shown in the aforementioned Agreements) of Vacation-Holiday-Savings in trust, up to and including the last pay period of the month, and shall then deposit said savings with a designated institution as provided in the Deposit Agreement. The weekly check stub shall indicate the amount of savings withheld. Upon receipt of these monies (timely and accurate negotiable check or cash) and the properly completed report form by the Trust, the Employer shall have no further responsibility for same. The designated institution shall maintain an individual account for each employee and said employee may withdraw his/her funds upon identification verification.

SECTION B. It is understood and agreed that these monies are allocated as part of wages received each week, and withholdings are made in the form of a Vacation-Holiday-Savings for the exclusive benefit of the employee. Payment of these savings to the employee, upon termination of employment, shall in no way interfere with his/her right to draw unemployment benefits from any state or seek employment immediately, as outlined in the Hiring Hall facilities.

SECTION C. Vacation time shall be taken at a time mutually agreeable to the Employer and the employee.

## ITEM 4. HOURLY FRINGE CONTRIBUTIONS

The Bay Area Association shall appoint all Employer trustees to the Local 104 Fringe Benefit Funds that heretofore were appointed by the affiliated SMACNA Chapters.

SECTION A. **UNION DUES CHECK-OFF FUND** - In order that taxes will be paid each week, the gross taxable wages shall include the Union Dues Check-off monies in the amount shown in the Wage and Fringe Schedules. After normal tax deductions are made from the weekly gross taxable wages, each Employer agrees to withhold the full amount in trust, up to and including the last pay period of the month, and shall then deposit said check-off monies with a bank or other party, as provided in Item 4 herein, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement. The weekly check stub shall indicate the amount withheld. Upon receipt of these monies (timely and accurate negotiable check or cash), and report by the bank, the Employer shall have no further responsibility for same. Each employee, in conformance with the Labor-Management Relations Act of 1947, as amended, shall give the Employer or have on file with Local 104, written authorization for such deduction. Said payment shall be made to the Administrator through such bank or other party at such place, in such manner and on such report form as mutually agreed by the signatory parties to this Agreement. Dues to be checked-off pursuant to this Section shall include all Union Dues Check-off obligations.

SECTION B. Each Employer shall contribute to the Administrator/Trustees the sums designated for each hour worked by each employee covered by this Agreement, including overtime, to the following Funds, per the Wage and Fringe Schedules, Summary Plan Descriptions, and Plan documents:

1. SMW 104 Union Dues Check-off
2. SMW 104 Vacation
3. SMW Local 104 Health Care Plan
4. SMW Northern California Pension Plan
5. SMW National Pension Plan
6. SMW Local 104 Supplemental Pension Fund
7. SMW Local 104 and Bay Area Industry Training Fund
8. International Training Institute
9. National Energy Management Institute Committee
10. Sheet Metal Occupational Health Institute Trust
11. SMACNA Industry Fund
12. Any other funds mutually agreed to by the parties

Said payment shall be made to the Administrator/Trustees through such bank or other party at such place, in such manner and on such report forms as mutually agreed by the parties to these Agreements. These Plans shall be administered as provided in the established Trust Agreements.

The parties agree that to comply with Internal Revenue Code Section 415 and applicable regulations issued thereunder, certain pension benefits that would otherwise be payable from the Sheet Metal Workers' Pension Plan of Northern California may be provided by the Excess Benefits Plan previously adopted by the Board of Trustees of the Sheet Metal Workers' Pension Plan of Northern California. The parties incorporate the terms of the Excess Benefits Plan as part of this Agreement.

SECTION C. **LOCAL 104 TRAINING FUND** - There shall be one central training fund for all areas with all training fund contributions directed into one fund.

1. The parties have established an Agreement and Declaration of Trust for the Sheet Metal Workers' Local 104 and Bay Area Industry Training Fund (the "Fund"). This Fund shall exist for the sole purpose of funding the Apprentice training program, and any programs established by the Trustees of the Fund for the training and upgrading of Journeypersons. The Fund shall be administered by a Joint Board of Trustees, in accordance with the provisions of the Taft-Hartley Act and all other applicable federal and state laws, composed of any equal number as the committee may deem necessary, representing the Union (Labor) and the Employer (Management). Sheet Metal Workers' Local No. 104 shall appoint the Labor representatives. The Bay Area Association of Sheet Metal Contractors shall appoint the Employer representatives. Written notice of such appointments (or replacements thereof) shall be given to the parties or their Association, and the Fund Administrator.

2. The Agreement and Declaration of Trust referred to herein shall become a part of this Addendum as if set forth in full herein. All parties to this Addendum agree to be bound by the Agreement and Declaration of Trust establishing the Fund and by all amendments thereto as may be made from time to time, and hereby designate as their representative on the Board of Trustees as are named, together with any successors who may be appointed pursuant to said Agreement.

3. Each Employer shall contribute to the Administrator/Trustees of the Sheet Metal Local 104 and Bay Area Industry Training Fund, the sum designated in the Wage and Fringe Schedule(s) for each hour worked, including overtime, by each employee covered by this Agreement, through such bank or other party, at such place, in such manner and on such report form as designated by the signatory parties of this Agreement.

4. The Trustees for the Local 104 and Bay Area Industry Training Fund shall expend these Training Fund contributions as outlined in the Trust Agreement, for the establishment and maintenance of training and educational programs, as may be agreed upon from time to time by said Trustees, for all classification of employees covered by this bargaining agreement and/or any other approved bargaining agreements.

5. The Administrator of the Sheet Metal Workers' Local 104 Trust Fund shall transmit to the Trustees of the National Training Fund and the National Energy Management Institute Committee, on a monthly basis, the designated amounts from each hour's contribution received under the provisions of this Agreement. These

Funds shall be administered as provided in the established Trust Agreement.

6. The Trustees of the Local 104 Bay Area Industry Training Fund shall transmit to the Local 104 Scholarship Investment Account the sum designated in the Wage and Fringe Schedules for each hour worked, including overtime, by each employee participating in the Local 104 Scholarship Program, on a monthly basis. This account shall be administered by the Local 104 Financial Secretary/Treasurer.

7. Any additional funding required by the Bay Area Training Trust Fund shall, upon the recommendation of the Chair and Co-chair, be equally shared between Local 104 and the Association.

## ITEM 5. PAYMENTS TO FUNDS AND BONDING

SECTION A. The amount of the payment to each of the Funds mentioned in Items 3 and 4 above shall be computed on the basis of each hour worked by each employee, including overtime, on all work covered by this Agreement. Contributions to these Funds (1-Vacation-Holiday, 2-Dues Check-off, 3-Health Care, 4-Northern California Pension Fund, 5-Local Supplemental Pension Fund, 6-Training Fund, 7-National Pension Fund, 8-ITI, 9-NEMIC, 10-SMOHIT, and 11-Industry Funds) provided herein shall not be duplicated on covered employees sent into this contract area from another contract area. However, if there is a difference in the amount of the hourly contribution, such difference shall be paid to the employees directly involved.

SECTION B. All of said payments shall be made no later than the tenth (10th) day of each month covering the payroll periods ending in the previous month. Such payments shall be made through such bank or other party, at such place, in such manner and on such report form as designated by the signatory parties to this Agreement. All Funds should be reported on a single monthly report form and covered by a single check or draft payable to the designated bank or other party. For collection and transmittal purposes, these monthly reports, together with all contributions, shall be forwarded on a timely basis to the bank or other party. The bank or other party shall disburse the monies payable to the Trustees of each Fund and forward same, together with a copy of the monthly report form.

SECTION C. All parties hereto recognize and agree that prompt payment to each of the Funds mentioned in Item 4 is essential to the fair and efficient administration of benefits under each Fund and the maintenance of benefits under each Fund. They further recognize that it would be extremely difficult, if not impossible, to fix actual damages and expenses to each Fund which would result from the failure of an Employer to make timely contributions or reports. Therefore, when an Employer fails to make any of said monthly contributions or fails to submit the properly completed monthly reports postmarked by the twentieth (20th) day of the month in which the contribution is due, such Employer shall be assessed an amount equal to: (a) the liquidated damages provided in each of the applicable Trust Agreement(s); or (b) if no liquidated damages provision exists in the applicable Trust Agreement(s) or no Trust Agreement exists for the Fund, the greater of ten percent (10%) of the delinquent contribution or twenty five dollars ($25.00) per Fund as liquidated damages resulting from the delinquency. At any time when an Employer is delinquent in submitting the contribution or a properly completed report, the Union may remove the employees from any shop or job of the delinquent Employer and refuse to furnish employees to such shop or job. The Employer agrees to pay all employees so removed their regular wages (not to exceed ten [10] days straight time pay) until such time as all delinquent payments and proper reports are received. The Employer agrees that in the event it is delinquent, it will pay all reasonable costs incurred by Sheet Metal Workers' Local Union 104 and the Trust Funds in connection with collection of the delinquency, including, but not limited to, court costs and reasonable attorney fees.

Unless the time limit is extended for good cause, by mutual agreement between the Association and the Union, the liquidated damages for delinquent contributions shall be included with said contributions and the properly completed monthly report.

SECTION D. **BONDING/SECURITY** - All Employers signatory hereto or who desire to perform work within the jurisdiction of Local 104, as a condition precedent to the performance of such work and/or the dispatch of employees pursuant to this Agreement, shall post adequate security to ensure the prompt payment of the following obligations arising under this Agreement: (1-Vacation-Holiday, 2-Dues Check-off, 3-Health Care, 4-Northern California Pension Fund, 5-Local Supplemental Pension Fund, 6-Training Fund, 7-National Pension Fund, 8-ITI, 9-NEMIC, 10-SMOHIT, and 11-Industry Funds) covered by this Agreement. The security shall, in addition, cover all liquidated damages and cost of collection, including, but not limited to audit fees and attorney's fees.

The security required herein shall take the form of one (1) surety bond or cash deposit written to specifications agreed upon between Local 104 and SMACNA. Either a bond or cash shall be deposited with Local 104 Trust